1   ALAN S. LEVINS, Bar No. 57612
    LITTLER MENDELSON
2   A Professional Corporation
    650 California Street, 20th Floor
3   San Francisco, CA 94108.2693
    Telephone:      415.433.1940
4   Fax No.:         415.399.8490
    Email:           alevins@littler.com
5
    Attorneys for Defendant
6   COMPASS GROUP USA, INC.

7

8

9                       UNITED STATES DISTRICT COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11  JANET FITZSIMMONS                    Case No.  **C08-03131**

12              Plaintiff,              **NOTICE OF REMOVAL OF ACTION
                                        UNDER 28 U.S.C. § 1441(b)**
13      v.                              **(Federal Question)**

14  COMPASS GROUP USA, INC. dba         Alameda County Superior Court
15  COMPASS GROUP FOODSERVICE and       Case No. RG08382959
    as EUREST DINING SERVICES; EDITH
16  SALAS, HUMBERTO SALAS, and DOES
    1-10, inclusive,
17
                Defendants
18

19

20  TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE
21        NORTHERN DISTRICT OF CALIFORNIA:

22  PLEASE TAKE NOTICE that Defendant COMPASS GROUP USA, INC. hereby removes the

23  above-captioned action from the Superior Court of Alameda County to the United States District

24  Court for the Northern District of California, based on the following facts:

25  ///

26  ///

27  ///

28  ///

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL
Firmwide:85606366.1 024778.1226

**JURISDICTION**

1.     This is a suit of a wholly civil nature brought in a California court. The action is now pending in Alameda County, California. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(a), 1391, 1446. This case may be removed to this Court by the Defendant pursuant to the provisions of 28 U.S.C. § 1441(b) as a result of the existence of original jurisdiction based on federal question.

**INTRADISTRICT ASSIGNMENT**

2.     All civil actions that arise in the county of Alameda shall be assigned to the San Francisco Division or the Oakland Division. Northern District Civil Local Rule 3-2(c) and (d); 3-5(b).

**STATUS OF THE PLEADINGS**

3.     On April 21, 2008, Plaintiff Janet Fitzsimmons ("Plaintiff") commenced this action by filing a Summons, Civil Cover Sheet, and a Complaint in the Superior Court of California, County of Alameda, entitled *Janet Fitzsimmons v. Compass Group USA, Inc. dba Compass Group Foodservice and as Eurest Dining Services; Edith Salas, Humberto Salas, and Does 1 through 10, inclusive*, Case No. RG08382959. ("Complaint"). True and correct copies of the Civil Action Sheet, Summons, and Complaint are attached hereto as Exhibit A.

4.     On April 21, 2008, the Court issued a Notice of Judicial Assignment for All Purposes, a copy of which is attached as Exhibit B.

5.     On April 22, 2008, the Court issued a Notice of Case Management Conference and Order, a copy of which is attached as Exhibit C.

6.     Defendant Compass Group USA, Inc. was served with the Complaint on June 11, 2008.

7.     On June 27, 2008, Defendant filed an Answer to Plaintiff's Complaint in the Superior Court for the County of Alameda, a copy of which is attached as Exhibit D.

8.     As of the date of filing this Notice, Plaintiff has not effectuated service upon Mr. Humberto Salas or Ms. Edith Salas. Therefore, Mr. Salas and Ms. Salas are not required to join this Notice of Removal. 28 U.S.C. § 1441(a); *Salverson v. W. States Bankcard Ass'n*, 731 F.2d

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108-2693
415.433.1940

NOTICE OF REMOVAL
Firmwide:85606366.1 024778.1226                                          2.

1   1423, 1429 (9th Cir. 1984) (party not served need not be joined in removal).

2        9.   Defendant is informed and believes that none of the Doe Defendants in this

3   case have been identified or served.  Doe Defendants designated 1 to 10 are fictitious, are not parties

4   to this action, have not been served, and are to be disregarded for the purpose of this removal.  28

5   U.S.C. § 1441(a).  For this reason, the Doe Defendants need not be joined in this removal.  *Emrich v.*

6   *Touche Ross & Co.*, 846 F.2d 1190, 1193, n. 1 (9th Cir. 1988) (general rule that all defendants in a

7   state action must join in removal applies only to defendants served in the action).

8        10.   The instant Notice of Removal is timely filed as it is within thirty (30) days of

9   the service date upon Defendant Compass Group, Inc., of the initial pleading pursuant to 28 U.S.C. §

10   1446(b).

11        **FEDERAL QUESTION**

12        11.   At all relevant times, defendant Compass Group, Inc. ("Compass") has been,

13   and is, a corporation engaged in commerce and in an industry affecting commerce within the

14   meaning of Sections 2(2), (6), (7) and 301(a) of the Labor Management Relations Act ("LMRA"),

15   29 U.S.C. §§ 152(2), (6), (7) and 185(a).  At all relevant times, defendant Compass has been, and is,

16   engaged in the sale, preparation and distribution of food products.

17        12.   At all relevant times, the United Automobile, Aerospace and Agricultural

18   Implement Workers of America International Union, Local No. 76 ("UAW") has been, and is a labor

19   organization in which certain employees of Compass participate and which exists for the purpose of

20   dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours of

21   employment, and conditions of work.  At all relevant times, the UAW has been, and is a labor

22   organization within the meaning of Section 2(5) and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and

23   185(a).

24        13.   At all relevant times during her continued employment with Compass,

25   Plaintiff Janet Fitzsimmons was employed in the NUMMI division of Eurest Dining Services as a

26   food preparer and is a member of UAW.

27        14.   At all relevant times, the terms of Plaintiff's employment with Compass were

28   specifically governed by collectively bargained labor-management agreements entered into between

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL          3.
Firmwide:85606366.1 024778.1226

1    Compass and UAW.   A true and correct copy of the applicable collectively bargained labor-

2    management agreement between Compass and UAW (the 2004 Collective Bargaining Agreement) is

3    attached hereto as Exhibit E.   At all relevant times, this Collective Bargaining Agreement has been

4    and is a contract between an employer and a labor organization within the meaning of Section 301(a)

5    of the LMRA, 29 U.S.C. § 185(a).

6         15.    Despite Plaintiff's failure to directly refer to the Collective Bargaining

7    Agreement or the federal statute involved in her complaint, the allegations contained in the

8    complaint in support of the eighth cause of action for "intentional infliction of emotional distress"

9    (Complaint ¶¶ 71 pp. 12:22-13:3) allege that Compass, among other things, "wrongfully cancelled

10   her medical insurance," and "refused to reinstate it" while Plaintiff was taking a leave of absence.

11   (Complaint ¶¶ 16 p. 4:13, 4:16).   These allegations allege a breach of the Collective Bargaining

12   Agreement which regulates the appropriate procedures an employee must follow to maintain health

13   care coverage while out on leave.   (See, the 2004 Collective Bargaining Agreement, Article 15

14   (Section 5 page 18)(which states that Compass may require any employee to pay his/her own

15   premiums to maintain health and welfare coverage once that employee has been on leave for more

16   than thirty days).   As such, the true nature of the eighth cause of action involves a claim arising

17   under § 301 of the LMRA, 29 U.S.C. § 185.

18        16.    A plaintiff may not be permitted to "artfully plead" his complaint to conceal

19   the true nature of the complaint. *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189 (9th Cir.

20   1983).   Thus, the fact that Plaintiff has not made specific reference to the Collective Bargaining

21   Agreement or to Section 301 of the LMRA will not preclude removal.   *Milne Employees Ass'n v.*

22   *Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991); *Fristoe v. Reynolds Metals Co.*, 615 F.2d

23   1209, 1212 (9th Cir. 1980).   The Court may properly look beyond the face of the complaint to

24   determine whether the claims asserted are, in fact, a Section 301 claim for breach of the Collective

25   Bargaining Agreement which has been "artfully pleaded" to avoid federal jurisdiction.   *Page v.*

26   *Henry J. Kaiser Co.*, 826 F.2d 857, 860-61 (9th Cir. 1987); *Young v. Anthony's Fish Grottos, Inc.*,

27   830 F.2d 993 (9th Cir. 1987).   Additionally, the Court may properly look to the facts stated in the

28   Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL                                    4.
Firmwide:85606366.1 024778.1226

1    action within federal jurisdiction." *Schroeder, supra*, 702 F.2d at 191.

2         17.    An artfully pled state law claim is properly "recharacterized" as a federal

3    claim under the "complete preemption" doctrine, which provides that the preemptive force of

4    Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim

5    for purposes of the well-pleaded complaint rule" and are removable to federal court. *Caterpillar Inc.*

6    *v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425 (1987); *Franchise Tax Board v. Construction*

7    *Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841 (1983) ("if a federal cause of action

8    completely preempts a state cause of action, any complaint that comes within the scope of the

9    federal cause of action necessarily 'arises' under federal law"); *Associated Builders & Contractors,*

10   *Inc. v. Local 302, IBEW*, 109 F.3d 1353, 1356 (9th Cir. 1997); *Milne, supra*, 960 F.2d at 1406.

11        18.    As this action is a suit alleging a violation of a contract between an employer

12   and a labor organization representing employees in an industry affecting commerce within the

13   meaning of Section 301 of the LMRA, 29 U.S.C. § 185, this is an action over which this Court has

14   original jurisdiction without respect to the amount in controversy and without regard to the

15   citizenship of the parties, as provided in 29 U.S.C. § 185.

16        19.    This action under 29 U.S.C. § 185 is a suit arising under an act of Congress

17   over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, without regard to the

18   amount in controversy.

19        20.    Since this action under 29 U.S.C. § 185 is a suit involving claims of a right

20   arising, if at all, under the laws of the United States, it may be removed to this Court under the

21   provisions of 28 U.S.C. §§ 1441(b) and 1446, without regard to the citizenship or residence of the

22   parties.

23        21.    This Court has jurisdiction over Plaintiff's other alleged state law claims

24   pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. §1367(a) as they are so related

25   to the federal claims as to form part of the same case or controversy under Article III of the U.S.

26   Constitution.

27        22.    In the event the Court should be inclined to remand this action, Defendant

28   requests that the Court issue an order to show cause why the case should not be remanded, giving

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL                                    5.
Firmwide:85606366.1 024778.1226

1    Defendant (as well as Plaintiff) an opportunity to present proper briefing and argument prior to any

2    possible remand.  Because a remand order is not subject to appellate review, such a procedure is

3    appropriate.

4              22.     Contemporaneously with the filing of this Notice of Removal in the United

5    States Court for the Northern District of California, Defendants will file a Notice to Plaintiff,

6    Plaintiff's counsel and State court (with its attachments) of Removal of Civil Action Pursuant to 28

7    U.S.C. §§ 1331, 1441(b) and 1446 (Federal Question) with the Clerk of the Superior Court for the

8    County of Alameda.  Attached as Exhibit F is a true and correct copy of said Notice without

9    attachments.

10             Wherefore, having provided notice as is required by law, the above-entitled action

11   should be removed from the Superior Court for the County of Alameda to this Court.

12

13   Dated:  June 30, 2008

14

15                                                   ALAN S. LEVINS
                                                     LITTLER MENDELSON
16                                                   A Professional Corporation

17                                                   Attorneys for Defendant
                                                     COMPASS GROUP USA, INC.

18   SFRDOCS:30468574.1 025558.1000

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

NOTICE OF REMOVAL                                6.
Firmwide:85606366.1 024778.1226

# EXHIBIT A


*6294391*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Valerie Toohey O'Dell (State Bar No. 101999)<br>O'Dell & O'Dell LLP<br>887 Island Drive, Suite 220c<br>Alameda, CA 94502<br>  TELEPHONE NO.: 510-814-3785   FAX NO.: 510-814-3795<br>ATTORNEY FOR *(Name)*: Plaintiff Janet Fitzsimmons | FOR COURT USE ONLY<br><br>**FILED**<br>ALAMEDA COUNTY<br><br>APR 2 1 2008<br><br>CLERK OF THE SUPERIOR COURT<br>By *Cheryl Watkins*<br>                              Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
  STREET ADDRESS: 1225 Fallon Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: Oakland, CA 94612
  BRANCH NAME:

CASE NAME:
Janet Fitzsimmons v. Compass Group USA, Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>RG08 382959 |
|---|---|---|---|
| [✓] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] **Counter**   [ ] **Joinder**<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[✓] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action *(specify)*:  8 (sexual harassment, retaliation, assault, sexual/battery, iied, sex'l violence)
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 21, 2008
Valerie Toohey O'Dell (SBN 101999)
_____
(TYPE OR PRINT NAME)

▸ *Valerie Toohey O'Dell*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com



*6294395*

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COMPASS GROUP USA, INC. dba COMPASS GROUP FOOD
SERVICE and as EUREST DINING SERVICES; EDITH SALAS,
HUMBERTO SALAS and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JANET FITZSIMMONS

> **FOR COURT USE ONLY**
> *(SOLO PARA USO DE LA CORTE)*
>
> **FILED**
> ALAMEDA COUNTY
>
> APR 2 1 2008
>
> CLERK OF THE SUPERIOR COURT
> By *Cheryl Watkins*
> Deputy

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is: Superior Court, Alameda County
*(El nombre y dirección de la corte es):*

1225 Fallon Street, Oakland, CA 94612

**CASE NUMBER:** *(Número del Caso):* **G08 382 959**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Valerie Toohey O'Dell, 887 Island Drive, Suite 220c, Alameda, CA 94502, 510-814-3785

DATE: April 21, 2008          **PAT S. SWEETEN**       Clerk, by *Cheryl Watkins* , Deputy
*(Fecha)*                          *(Secretario)*                                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA
EUREKA

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

ENDORSED
FILED
ALAMEDA COUNTY

APR 2 1 2008

CLERK OF THE SUPERIOR COURT
By _____
C. Watkins
Deputy

1  VALERIE TOOHEY O'DELL (State Bar No. 101999)
   JAMES R. O'DELL (State Bar No. 181397)
2  O'DELL & O'DELL, LLP
   887 Island Drive, Suite 220c
3  Alameda, CA  94502
   Telephone (510) 814-3785
4  Fax       (510) 814-3795

5  Attorneys for Plaintiff
   JANET FITZSIMMONS
6

7              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          COUNTY OF ALAMEDA

9  JANET FITZSIMMONS,
                                          Civil Action No. RG 08 38 2 9 5 9
10              Plaintiff,

11 v.                                     COMPLAINT FOR DAMAGES FOR
                                          SEXUAL HARASSMENT; FAILURE TO
12 COMPASS GROUP USA, INC. dba            TAKE REASONABLE STEPS TO
   COMPASS GROUP FOODSERVICE and          PREVENT AND CORRECT SEXUAL
13 as EUREST DINING SERVICES; EDITH       HARASSMENT; RETALIATION;
   SALAS, HUMBERTO SALAS, and DOES        ASSAULT; BATTERY; SEXUAL
14 1 through 10, inclusive,               BATTERY; INTENTIONAL INFLICTION
                Defendants.               OF EMOTIONAL DISTRESS;
15 _____/   INTIMIDATION OR THREAT OF
                                          VIOLENCE BECAUSE OF SEX
16

17     Plaintiff JANET FITZSIMMONS for her complaint against Defendant COMPASS

18 GROUP USA, INC., dba COMPASS GROUP FOODSERVICE AND AS EUREST DINING

19 SERVICES,  and referred to herein as "Defendant Compass Group," EDITH SALAS,

20 HUMBERTO SALAS, and DOES 1 through 10, inclusive, hereafter all collectively referred to as

21 "Defendants," alleges as follows:

22                          **JURISDICTION AND VENUE**

23     1.   This Court has jurisdiction of this action because the alleged wrongful and discriminatory

24 conduct occurred at a place of employment situated in the City of Fremont, in the County of

25 Alameda, in the State of California.

26                                **PARTIES**

27     2.   Plaintiff JANET FITZSIMMONS is an adult female who is employed by Compass Group

28 COMPLAINT FOR DAMAGES
   Fitzsimmons v. Compass Group, Eurest Dining, et al.

1  in the NUMMI facility in Fremont, California.  She has worked there at the NUMMI facility for

2  13 years.  Defendant Compass Group has held the contract for the last few years. Ms.

3  Fitzsimmons' performance has always been satisfactory.

4      3.   At all material times, Plaintiff was an employee within the meaning of California

5  Government Code section 12940 subdivisions (a), (h) and (j) which obligate employers to

6  provide a work environment free from sexual harassment and to take all steps necessary to

7  prevent and correct sexual harassment and to refrain from retaliation against those who oppose or

8  report sexual harassment.

9      4.   Defendant Compass Group is a corporation licensed to do business in California.

10     5.   Defendant Humberto Salas is an adult male formerly employed by Defendant Compass

11  Group as a cook.

12     6.   Defendant Edith Salas, Humberto Salas' daughter,  is an adult female employed at all

13  relevant times by Defendants Compass Group as a kitchen worker.

14     7.   The true names or capacities, whether individual, corporate, associate or otherwise, of

15  Defendant Does 1 to 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants

16  by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the

17  Defendants designated herein as Doe is legally responsible in some manner (as the agent, partner

18  and/or employee of a co-defendant) for the events and happenings herein referred to and in doing

19  the actions mentioned below was acting individually and as an agent of the other Defendants, and

20  with their permission and consent.  All actions of each Defendant herein alleged were ratified

21  and approved by the other individual Defendants and by the officers and managing agents of each

22  corporate Defendant and partnership.

23              **FACTS COMMON TO ALL CAUSES OF ACTION**

24     8.   At all material times, Plaintiff was employed by Defendant Compass Group.

25     9.   Beginning in approximately 2006, Plaintiff and other female employees were subjected to

26  an on-going pattern of sexual assaults and sexual harassment by Defendant Humberto Salas.

27  The harassment was sufficiently severe and/or pervasive so as to alter the conditions of

28

COMPLAINT FOR DAMAGES
Fitzsimmons v. Compass Group, Eurest Dining, et al.                    2

1    Plaintiff's employment.  The harassment included but is not limited to the following:

2         a.      In or about early 2007, Ms. Fitzsimmons observed Salas choke a female co-

3    worker.  Afterward, Defendant Edith Salas called Ms. Fitzsimmons into the bathroom, shoved

4    her up against a locker and told Ms. Fitzsimmons that if she ever reported her father to

5    management, she would kill Ms. Fitzsimmons. She stated that she knew where Ms. Fitzsimmons

6    lived, that she knew that Ms. Fitzsimmons lived alone, and knew that Ms. Fitzsimmons walked

7    alone to and from BART on her way to work.

8         b.      Plaintiff was advised by her female co-workers that similar death threats were

9    made against them and against their children by Defendant Edith Salas.

10        c.      Thereafter, apparently emboldened, Defendant Humberto Salas escalated his

11   campaign of sexual harassment toward the female employees, including Plaintiff.  With respect

12   to Plaintiff, he repeatedly grabbed Ms. Fitzsimmons' buttocks.  He also bragged to her about the

13   size of his penis, and told her to come into the back room and perform oral sex on him. In

14   addition, he repeatedly advised Ms. Fitzsimmons that he wanted to come to her apartment and

15   have sex.  In April 2007, he reached inside of Ms. Fitzsimmons' blouse, into her bra, and

16   grabbed and pulled her breast so hard that he left a bruise.

17   10.   Ms. Fitzsimmons was forced to seek medical attention.  Her doctor, upon learning what

18   had occurred, contacted the police.  A police report was filed with the Fremont police.

19   11.   The sexual harassment and death threats have been so extreme that it caused Ms.

20   Fitzsimmons to experience debilitating depression and anxiety requiring her to take several

21   months of medical leave from work.

22   12.   Although Mr. Salas was ultimately terminated, Defendant Compass had prior knowledge

23   of his proclivities to sexually harass women in the workplace, and failed to insure that his sexual

24   harassment and assaults stopped, and failed to insure that did not harm and sexually harass other

25   female employees.

26   13.   Compass Group, knowing of previous incidents of sexual harassment of female

27   employees by Defendant Salas, nonetheless assigned him to work in the Compass Group's dining

28   
COMPLAINT FOR DAMAGES
Fitzsimmons v. Compass Group, Eurest Dining, et al.          3

1   facility located at NUMMI without proper supervision or management.  Not surprisingly,

2   Defendant Salas continued to sexually harass and abuse the women in the facility, including Ms.

3   Fitzsimmons, with the assistance of his daughter.  The daughter, Edith Salas, aided and abetted

4   the sexual harassment and physical abuse of female employees by threatening to kill female

5   employees and their children if they reported her father's misconduct to management.

6       14.    Despite clear knowledge of the threats made by Mr. Salas' daughter to Ms. Fitzsimmons

7   and other women, Compass Group continues to employ Defendant Edith Salas in the same plant

8   where Ms. Fitzsimmons works.

9       15.    After Plaintiff complained about the sexual harassment, Defendants subjected Plaintiff to

10  retaliatory acts which had a material, adverse effect on her employment.

11      16.    When Plaintiff was forced to take a medical leave of absence due to the sexual

12  harassment and death threats she encountered at the workplace, Defendant Compass Group

13  retaliated against her by unlawfully cancelling Ms. Fitzsimmons' health insurance coverage

14  although she was on a workers compensation leave of absence.  Even after Plaintiff returned to

15  work in early December 2007, and although Plaintiff repeatedly advised Defendant Compass

16  Group that it had wrongfully cancelled her medical insurance, it refused to reinstate it until

17  February 2008.

18      17.    Defendant Compass also unlawfully characterized Plaintiff's leave as one under the

19  Family Medical Leave Act and refused to correct it despite her repeated requests to correct the

20  error.

21      18.    After Plaintiff returned to work in early December 2007, Defendant Edith Salas

22  continued to threaten, harass and intimidate Plaintiff with hostile glaring, following Plaintiff

23  around the facility, and clenching and unclenching her fists when she sees Plaintiff.  The

24  situation was so threatening to Plaintiff that in early 2008, Plaintiff was forced to take another

25  leave of absence.  Defendants refused to commit to keeping Defendant Edith Salas from

26  harassing or threatening Plaintiff, which led Plaintiff's workers compensation doctor to refuse to

27  release her to work.  Plaintiff has just returned to work on March 31, 2008.

28

COMPLAINT FOR DAMAGES
Fitzsimmons v. Compass Group, Eurest Dining, et al.                    4

19.    Defendants Compass Group knew or should have known about Humberto Salas' and Edith Salas' acts of and propensity to commit acts of sexual harassment and intimidation by threat of violence and retaliation.  Nonetheless, they failed to take appropriate preventive or corrective action or to provide proper training or supervision.

20.    Defendants' sexual and retaliatory harassment of Plaintiff was and is so severe, pervasive and continuous as to create a hostile and offensive work environment for Plaintiff.  This constitutes a continuing violation.

21.    Defendants Compass Group knew or should have known of the sexual harassment and threats of violence and intimidation by its employees,  yet Defendants failed to take effective action to prevent the sexual harassment in the first place and failed to appropriately respond to correct the sexual harassment and threats of violence.

22.    Defendants Compass Group knew or should have known of the retaliation by its employees and Managers,  yet Defendants failed to take effective action to prevent retaliation from occurring and failed to appropriately respond to correct the retaliation.

**FIRST CAUSE OF ACTION**

**(Violation of California Fair Employment and Housing Act**

**Government Code Section 12940 (a), (i) & (j) - Sexual Harassment)**

As a first cause of action against all Defendants Plaintiff alleges:

23.    The allegations set forth in paragraphs 1 through 22 are realleged and incorporated herein by reference as though fully set forth herein.

24.    At all times herein mentioned, Government Code section 12940, subdivisions (a), (i) and (j) were in full force and effect and were binding on Defendants.  These subsections require Defendants to take all reasonable steps to prevent sexual harassment from occurring, to refrain from sexual harassment, to refrain from aiding and abetting sexual harassment and retaliation, and to take immediate corrective action if and when sexual harassment occurs.

25.    The acts of Defendants, as described more fully above, consisting of sexual assault and battery, sexual touching, attempted sexual touching, assault, battery, threats of violence and

1  death, verbal sexual harassment and sexual remarks and demands for sex directed at or in the

2  presence of Plaintiff, constitute sexual harassment or aiding and abetting sexual harassment in

3  violation of Government Code section 12940, subdivisions (a), (i) and (j).

4      26.  Within the time provided by law, Plaintiff caused to have filed charges with the

5  California Department of Fair Employment and Housing ("DFEH") against Defendants alleging

6  sexual harassment.  In response to these charges, DFEH issued right-to-sue letters.

7      27.  As a proximate result of Defendants' willful, knowing and intentional acts of

8  discrimination and harassment against her, Plaintiff has sustained losses in earnings and other

9  employment benefits.

10     28.  As a proximate result of Defendants' willful, knowing and intentional discrimination

11  and harassment against her, Plaintiff suffered emotional distress and mental pain and anguish.

12     29.  Defendants' conduct, as described above, was willful, knowing and intentional.

13  Accordingly, Plaintiff seeks an award of punitive and exemplary damages.  Defendants

14  committed the acts herein alleged maliciously, fraudulently and oppressively with the wrongful

15  intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in

16  conscious disregard of her rights.  Such conduct was carried out, authorized and/or ratified, or

17  aided and abetted by directors or managing agents of Defendant Compass Group.

18     30.  As a direct result of the acts alleged above, Plaintiff has had to hire the services of an

19  attorney.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, and is

20  entitled to an award of attorneys' fees and costs pursuant to Government Code section 12965(b).

21         WHEREFORE, Plaintiff prays for judgment as set forth below.

22                     **SECOND CAUSE OF ACTION**

23           **(Violation of California Fair Employment and Housing Act**

24             **Government Code Section 12940 (k) -**

25  **Failure to take all Reasonable Steps to Prevent Sexual Harassment and Retaliation)**

26         As a second cause of action against Defendant Compass Group, Plaintiff alleges:

27     31.  The allegations set forth in paragraphs 1 through 30 are realleged and incorporated

28

COMPLAINT FOR DAMAGES
Fitzsimmons v. Compass Group, Eurest Dining, et al.                          6

1   herein by reference as though fully set forth herein.

2     32.   Defendants Compass Group knew or reasonably should have known of its employees'

3   propensities to engage in unlawful, discriminatory and harassing conduct in the workplace and

4   should have restrained them from engaging in such conduct and/or Defendants Compass Group

5   should have taken steps to prevent its supervisors and employees from engaging in unlawful

6   discriminatory conduct.  Defendants should have provided appropriate training, supervision and

7   control before placing such employees in the work environment.

8     33.   Plaintiff is informed and believes that no sexual harassment training or inadequate

9   sexual harassment training occurred at Defendant Compass Group's premises and that the

10   managers, supervisors and employees were not provided training or were given inadequate

11   training on laws prohibiting sexual harassment, retaliation and intimidation by threat of violence.

12     34.   At all times herein mentioned, Government Code section 12940 (k) was in full force and

13   effect and was binding on Defendants Compass Group.  This subsection requires Defendant

14   Compass Group  to take all reasonable steps necessary to prevent discrimination and harassment

15   from occurring.  As alleged above, Defendant Compass Group violated this subsection by failing

16   to take all reasonable steps necessary to prevent its employees and supervisors from sexually

17   harassing Plaintiff and other female employees, and failed to adequately investigate and respond

18   to her complaints of sexual harassment, as well as complaints of other female employees and to

19   remedy the harassment.

20     35.   Within the time provided by law, Plaintiff caused to have filed  charges with the

21   California Department of Fair Employment and Housing (DFEH) alleging sexual harassment

22   against Defendant Compass Group in full compliance with the Fair Employment and Housing

23   Act.  In response to these charges, DFEH issued right to sue letters.

24     36.   As a proximate result of Defendants' willful, knowing and intentional acts of sexual

25   harassment against Plaintiff, she has sustained losses in earnings and other employment benefits.

26     37.   As a proximate result of Defendants' failure to take reasonable steps to prevent sexual

27   harassment, Plaintiff  suffered emotional distress and mental pain and anguish, all to her damage

28

COMPLAINT FOR DAMAGES
Fitzsimmons v. Compass Group, Eurest Dining, et al.

in a sum according to proof.

38.   Defendant committed the acts herein alleged maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff.  Such conduct was both engaged in and ratified by the supervisors and managers of Defendant and was thus authorized and/or ratified by Defendant.    Accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

39.   As a direct cause of the acts alleged above, Plaintiff has had to hire the services of an attorney.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, and is entitled to an award of attorneys' fees and costs pursuant to Government Code section 12965(b).

### THIRD CAUSE OF ACTION

### (Violation of California Fair Employment and Housing Act
### Government Code Section 12940 (h) - Retaliation)

As a third cause of action against Defendant Compass Group, Plaintiff alleges:

40.   The allegations set forth in paragraphs 1 through 39 are realleged and incorporated herein by reference as though fully set forth herein.

41.   At all times herein mentioned, Government Code section 12940, subdivision (h) was in full force and effect and was binding on Defendant.  This subsection makes it an unlawful act for Defendants to take adverse action against an employee because she has opposed any practices forbidden under that part or because the person has filed a complaint, testified or assisted in any proceeding under that part.

42.   After Plaintiff complained to Defendants about sexual harassment and discrimination, Defendants retaliated against Plaintiff by actions which included, but are not limited to, refusing to protect her from further threats and intimidation by Defendant Edith Salas, refusing to provide Plaintiff with a safe workplace, cancelling her medical insurance and refusing to reinstate it in a timely manner, and refusing to cooperate with Plaintiff's doctor to permit her to return to work.

43.   Within the time provided by law, Plaintiff caused to have filed a charge with the DFEH

1  against Defendants alleging unlawful retaliation in full compliance with the Fair Employment

2  and Housing Act. In response to these charges, DFEH issued right to sue letters.

3      44.  As a proximate result of Defendants' willful, knowing and intentional acts of retaliation

4  against Plaintiff, she has sustained losses in earnings and other employment benefits.

5      45.  As a proximate result of Defendants' willful, knowing and intentional retaliation and

6  discrimination against her, Plaintiff suffered emotional distress and mental pain and anguish.

7      46.  Defendants' conduct, as described above, was willful, knowing and intentional.

8  Accordingly, Plaintiff seeks an award of punitive and exemplary damages. Defendant committed

9  the acts herein alleged maliciously, fraudulently and oppressively with the wrongful intention of

10  injuring Plaintiff from an improper and evil motive amounting to malice, and in conscious

11  disregard of her rights. Such conduct was carried out, authorized and/or ratified by a director or

12  managing agent of Defendant.

13      47.  As a direct cause of the acts alleged above, Plaintiff has had to hire the services of an

14  attorney. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, and is

15  entitled to an award of attorneys' fees and costs pursuant to Government Code section 12965(b).

16      WHEREFORE Plaintiff prays for judgment as set forth below.

17  **FOURTH CAUSE OF ACTION**

18  **(Assault)**

19      As a fourth cause of action against Defendants Humberto Salas and Edith Salas, Plaintiff

20  alleges:

21      48.  The allegations set forth in paragraphs 1 through 47 are realleged and incorporated

22  herein by reference as though fully set forth herein.

23      49.  Defendant Humberto Salas acted with the intention of causing harmful or offensive

24  contact, or the imminent apprehension of such contact, with Plaintiff. Plaintiff apprehended such

25  contact by the acts of Defendant Humberto Salas.

26      50.  Defendant Edith Salas acted with the intention of causing harmful or offensive contact,

27  or the imminent apprehension of such contact, with Plaintiff. Plaintiff apprehended such contact

28

COMPLAINT FOR DAMAGES
Fitzsimmons v. Compass Group, Eurest Dining, et al.      9

1   by the acts of Defendant Edith Salas.

2       51.   As a proximate result of the actions of Defendants Humberto Salas and Edith Salas,

3   Plaintiff suffered humiliation, emotional distress and mental pain and anguish, all to her damage

4   in an amount according to proof.

5       52.   Defendants' conduct was willful, knowing and intentional.  Accordingly, Plaintiff seeks

6   an award of punitive and exemplary damages in an amount according to proof.

7           WHEREFORE Plaintiff prays for judgment as set forth below.

8                   **FIFTH CAUSE OF ACTION**

9                     **(Battery)**

10     As a fifth cause of action against Defendants Humberto Salas and Edith Salas, Plaintiff

11   alleges:

12       53.   The allegations set forth in paragraphs 1 through 52 are realleged and incorporated

13   herein by reference as though fully set forth herein.

14       54.   Defendant Humberto Salas acted with the intention of causing harmful or offensive

15   contact with Plaintiff, and did in fact cause harmful and offensive contact with Plaintiff.

16       55.   Defendant Edith Salas acted with the intention of causing harmful or offensive contact

17   with Plaintiff, and did in fact cause harmful and offensive contact with Plaintiff.

18       56.   As a proximate result of these individual Defendants' acts, Plaintiff suffered fear, terror,

19   anxiety, humiliation, emotional distress, and physical and mental pain and anguish, all to her

20   damage in an amount according to proof.

21       57.   Defendants' conduct was willful, knowing and intentional.  Accordingly, Plaintiff seeks

22   an award of punitive and exemplary damages in an amount according to proof.

23           WHEREFORE Plaintiff prays for judgment as set forth below.

24                   **SIXTH CAUSE OF ACTION**

25                  **(Sexual Battery)**

26     As a sixth cause of action against Defendant Humberto Sala , Plaintiff alleges:

27       58.   The allegations set forth in paragraphs 1 through 57 are realleged and incorporated

28

1    herein by reference as though fully set forth herein.

2        59.   Defendant Humberto Salas acted with the intention of causing harmful or offensive

3    contact with intimate parts of Plaintiff's body.  Defendant Humberto Salas' acts resulted in

4    sexually offensive contact with Plaintiff.

5        60.   As a proximate result of Defendant Humberto Salas' acts, Plaintiff suffered fear,

6    humiliation, emotional distress and mental pain and anguish, all to her damage in a sum

7    according to proof.

8        61.   Defendant's conduct was willful, knowing and intentional.  Accordingly, Plaintiff seeks

9    an award of punitive and exemplary damages in an amount according to proof.

10        WHEREFORE Plaintiff prays for judgment as set forth below.

11                         **SEVENTH CAUSE OF ACTION**

12              **(Violation of California Civil Code Section 51.7)**

13        As a seventh cause of action against all Defendants, Plaintiff alleges:

14        62.   The allegations set forth in paragraphs 1 through 61 are realleged and incorporated

15    herein by reference as though fully set forth herein.

16        63.   At all times herein mentioned, California Civil Code Section 51.7 was in full force and

17    effect and was binding on Defendants.

18        64.   Defendants subjected Plaintiff to acts of violence, as well as intimidation by threat of

19    violence, committed against her person, because of her sex, female, in violation of Civil Code

20    Section 51.7.

21        65.   Defendant Compass Group is liable for the acts of sexual violence and intimidation

22    committed against the person of Plaintiff by their employees, managers and supervisors, because

23    Defendant Compass Group aided in, incited or conspired in the denial of Plaintiff's rights under

24    Civil Code Section 51.7; and knew or should have known of its employees' unlawful actions and

25    failed to prevent or stop such actions.

26        66.   Defendants aided, incited and/or conspired in the denial of Plaintiff's right to be free of

27    violence and intimidation because of her sex.

28

COMPLAINT FOR DAMAGES
Fitzsimmons v. Compass Group, Eurest Dining, et al.                    11

67. The acts of Defendants, and each of them, as described above, constitute acts of sexual violence or intimidation by threat of violence because of Plaintiff's sex, in violation of Civil Code Section 51.7.

68. As a proximate result of Defendants' willful, knowing and intentional denial of Plaintiff's right to be free of violence and intimidation by threat of violence because of her sex, Plaintiff suffered terror, fear, physical pain, humiliation, emotional distress and mental pain and anguish, all to her damage in a sum according to proof.

69. Defendants committed the acts herein alleged maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive, amounting to malice, and in conscious disregard of the rights of Plaintiff. Such conduct was tolerated, condoned, authorized and/or ratified by an owner, officer, director or managing agent of Defendants. Defendants' conduct as described above was willful, knowing and intentional. Accordingly, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

70. As a direct cause of the acts alleged above, Plaintiff has had to hire the services of an attorney. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, and is entitled to an award of attorneys' fees and costs pursuant to Government Code section 12965(b).

WHEREFORE Plaintiff prays for judgment as set forth below.

## EIGHTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

As an eighth cause of action against all Defendants Plaintiff alleges:

71. The allegations set forth in paragraphs 1 through 70 are realleged and incorporated herein by reference as though fully set forth herein.

72. Defendants' conduct was extreme and outrageous. Defendants acted with the intention of causing, or with reckless disregard for the probability of causing Plaintiff to suffer fear, pain, embarrassment, humiliation and severe emotional distress.

73. As a proximate cause of the acts alleged above, Plaintiff suffered injuries including, but

1  not limited to, fear, anxiety, embarrassment, humiliation, emotional distress and physical injury

2  and mental pain and anguish, all to her damage in a sum according to proof and further giving

3  rise to a claim for punitive and exemplary damages.

4       WHEREFORE Plaintiff prays for judgment as set forth below.

5  **REQUEST FOR JURY TRIAL**

6      Plaintiff requests a trial by jury.

7  **PRAYER FOR RELIEF**

8      **WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

9      1.   For compensatory damages, including lost wages and employment benefits and other

10  special damages according to proof;

11      2.   For mental and emotional distress damages;

12      3.   For punitive damages;

13      4.   For an award of treble damages pursuant to Civil Code Section 52;

14      5.   For an award of interest, including prejudgment interest, at the legal rate;

15      6.   For an award of attorneys' fees;

16      7.   For costs of suit incurred;

17      8.   For such other and further relief as the Court deems appropriate.

18

19  Dated: April 24, 2008

20                     By: _____
                           Valerie Toohey O'Dell

21                             James R. O'Dell
                           O'DELL & O'DELL, LLP

22                             Attorneys for Plaintiff

23                             JANET FITZSIMMONS

24

25

26

27

28
    COMPLAINT FOR DAMAGES
    Fitzsimmons v. Compass Group, Eurest Dining, et al.         13

# EXHIBIT B

### *Superior Court of California, County of Alameda*



### *Notice of Judicial Assignment for All Purposes*

Case Number: RG08382959
Case Title:   Fitzsimmons VS Compass Group USA, Inc.
Date of Filing: 04/21/2008

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**This case is hereby assigned for all purposes to:**

| | |
|---|---|
| **Judge:** | **Steven A. Brick** |
| **Department:** | **17** |
| **Address:** | **Administration Building** |
| | **1221 Oak Street** |
| | **Oakland CA 94612** |
| **Phone Number:** | **(510) 267-6933** |
| **Fax Number:** | **(510) 267-1505** |
| **Email Address:** | **Dept.17@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law. (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.)**

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

<u>General Procedures</u>

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Steven A. Brick
DEPARTMENT 17

Page 1 of 4

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

(1) Unrepresented litigants must also comply with pertinent rules, cited above. The Court maintains a Self-Help Center at the Wiley W. Manuel Courthouse, 2nd Floor, 661 Washington St., Oakland. Telephone. (510) 690-2501. (2) Counsel are expected to be familiar and comply with the Statement of Professionalism and Civility, Alameda County Bar Association www.acbanet.org (click on link at the bottom of the home page). (3) Appearances by attorneys who are not counsel of record are not permitted except for good cause. (4) Except when requested in a particular case, chambers copies of filings are not necessary.

## Schedule for Department 17

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions. Contacts with Dept. 17 should be by email with copies to all counsel after conferring about proposed dates.

- Trials generally are held: Unless otherwise advised, Mondays through Fridays, 8:30 a.m. to 1:30 p.m. with two morning breaks. A pretrial conference may be scheduled 2 to 3 weeks before trial at 2:00 p.m. on a Friday.

- Case Management Conferences are held: Mondays through Thursdays at 3:00 p.m. Timely filed and complete case management conference statements may obviate the need for in person conferences. Check the Register of Actions on Domain 3 days in advance.

- Law and Motion matters are heard: Wednesdays and Thursdays at 3:00 p.m. (maximum 5 each). Email Dept. 17 to obtain a reservation. Limited hearings are available for summary judgments, preliminary injunctions and other time intensive motions.

- Settlement Conferences are heard: Unless otherwise advised, Mondays and Tuesdays at 3:00 p.m.

- Ex Parte matters are heard: Wednesdays and Thursdays at 3:00 p.m. Email Dept. 17 to obtain a reservation on these calendars or to specially set a time sensitive emergency matter.

- (1) Counsel should consider and recommend creative, efficient approaches to valuing and resolving their case (CRC §3.724). (2) Potential discovery and other problems should be anticipated and discussed. (3) No discovery motion shall be filed without prior serious efforts to resolve it. If unsuccessful, Moving party may then email the Court attaching a letter (max 3 pages) outlining the dispute. Opposing party may email a brief response within 24 hours. The Court will advise the parties how the issue will be resolved.

## Law and Motion Procedures

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
    Email:        Dept.17@lameda.courts.ca.gov


- Ex Parte Matters
    Email:        Dept.17@lameda.courts.ca.gov


**Tentative Rulings**

The court will issue tentative rulings in accordance with the Local Rules.  Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website:  www.alameda.courts.ca.gov/domainweb, Calendar Information for Dept. 17

- Phone:  1-866-223-2244


Dated:  04/22/2008                                    Executive Officer / Clerk of the Superior Court

                                        By    _____
                                                    digital
                                                        Deputy Clerk


---

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to this cause.  I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/23/2008

                                        By    _____
                                                    digital

Deputy Clerk

# EXHIBIT C

O'Dell & O'Dell LLP
Attn: O'Dell, Valerie Toohey
887 Island Drive
Suite 220c
Alameda, CA 94502

## Superior Court of California, County of Alameda

| Fitzsimmons | No. RG08382959 |
|---|---|
| **Plaintiff/Petitioner(s)** | |
| VS. | **NOTICE OF CASE MANAGEMENT** |
| | **CONFERENCE AND ORDER** |
| Compass Group USA, Inc. | Unlimited Jurisdiction |
| **Defendant/Respondent(s)** | |
| (Abbreviated Title) | |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.**

Notice is given that a Case Management Conference has been scheduled as follows:

| Date: **09/18/2008** | Department: **17** | Judge: **Steven A. Brick** |
|---|---|---|
| Time: **03:00 PM** | Location: **Administration Building** | Clerk: **Lynette Rushing** |
| | **Third Floor** | Clerk telephone: **(510) 267-6933** |
| | **1221 Oak Street, Oakland  CA 94612** | E-mail: |
| | | **Dept.17@alameda.courts.ca.gov** |
| | Internet: **http://www.alameda.courts.ca.gov** | Fax: **(510) 267-1505** |

### ORDERS

1. You must:
   a. **Serve** all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
   b. **Give notice** of this conference to any party not included in this notice and file proof of service;
   c. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than **30** calendar days before the date set for the Case Management Conference;
   d. **File and serve** a completed Case Management Conference Statement (use of Judicial Council Form CM 110 is mandatory) at least **15** days before the Case Management Conference (CRC 3.725)

2. If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

4. The Direct Calendar Judge will issue orders at the conclusion of the conference that should include:
   a. Referring to ADR and setting an ADR completion date
   b. Dismissing or severing claims or parties
   c. Setting a trial date.

*Telephonic appearances at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1-888-882-6878, or faxing a service request to 1-888-882-2946. This service is subject to charges by the vendor.

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 04/23/2008.

By _____

Deputy Clerk

# EXHIBIT D

 

1   ALAN S. LEVINS, Bar No. 57612
    LITTLER MENDELSON
2   A Professional Corporation
    650 California Street
3   20th Floor
    San Francisco, CA 94108.2693
4   Telephone:   415.433.1940
    Fax No.:     415.399.8490
5
    Attorneys for Defendant
6   COMPASS GROUP USA, INC.

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

JUN 2 7 2008

CLERK OF THE SUPERIOR COURT
By MARGARET J. DOWNE
                        Deputy

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10  JANET FITZSIMMONS,                    Case No. RG08382959

11              Plaintiff,                ASSIGNED FOR ALL PURPOSES TO
                                          JUDGE Steven A. Brick
12       v.                               DEPARTMENT 17

13  COMPASS GROUP USA, INC. dba           **DEFENDANT COMPASS GROUP USA'S**
    COMPASS GROUP FOODSERVICE             **ANSWER TO PLAINTIFF'S UNVERIFIED**
14  and as EUREST DINING SERVICES;        **COMPLAINT FOR DAMAGES**
    EDITH SALAS, HUMBERTO SALAS,
15  and DOES 1 through 10, inclusive,     Complaint filed on April 21, 2008.

16              Defendants.

17

18       Defendant COMPASS GROUP USA, INC., (hereinafter "Defendant") answers Plaintiff's

19  unverified Complaint for Damages for Sexual Harassment, Failure to Take Reasonable Steps to

20  Prevent and Correct Sexual Harassment, Retaliation, Assault, Battery, Sexual Battery, Intentional

21  Infliction of Emotional Distress, and Violence Because of Sex (hereinafter "the Complaint") as

22  follows:

23                          **GENERAL DENIAL**

24       Pursuant to section 431.30(d) of the California Code of Civil Procedure, Defendant

25  hereby answers the unverified Complaint filed by Plaintiff by generally denying each and every

26  allegation contained therein, by denying that Plaintiff has been damaged or has sustained any

27  damages as a result of the conduct alleged therein, and by asserting the following separate and

28  distinct affirmative defenses.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1

1

## AFFIRMATIVE DEFENSES

Defendant further asserts the following affirmative defenses.  By asserting the defenses, Defendant does not concede that they have the burden of production or proof as to any affirmative defense asserted below.  Defendant does not presently know all the factors concerning the conduct of Plaintiff sufficient to state all affirmative defenses at this time.  Defendant will seek leave of this Court to amend this answer should they later discover facts demonstrating the existence of additional affirmative defenses.

1.    Defendant alleges that the Complaint and each and every allegation contained therein, whether considered singly or in combination, fails to state facts sufficient to constitute a cause of action or claim for which relief may be granted.

2.    Defendant alleges that resolution of Plaintiff's claims is substantially dependent on analysis of the terms and conditions of the collective bargaining agreement that governs Plaintiff's employment and the complaint is therefore preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)).

3.    Defendant alleges that resolution of Plaintiff's claims relates to an employee benefit plan as defined under Section 4(a) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.), and is not exempt under Section 4(b) of that act.  The action is therefore preempted, pursuant to Title 29 of the United States Code, section 1144(a).

4.    Defendant alleges that at all times mentioned in the Complaint, Defendant performed and discharged in good faith each and every obligation, if any, owed to Plaintiff.

5.    Defendant alleges that each cause of action cannot be maintained against Defendant because, at all relevant times, Defendant acted reasonably and in good faith, based upon all relevant facts and circumstances known by them at the time they acted.

6.    Defendant alleges that Plaintiff's causes of action are barred, in whole or in part, by the applicable statute of limitations, including California Code of Civil Procedure section 340, and California Government Code sections 12960, 12965 and 12900.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

2.

DEF. COMPASS GROUP USA'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES  Case No. RG08382959



7.    Defendant alleges that Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, estoppel, waiver, laches and/or consent.

8.    Defendant alleges that Plaintiff has not suffered any damages as a result of Defendant's alleged conduct.

9.    Defendant alleges that Plaintiff failed to properly exhaust all of her administrative and/or contractual remedies prior to filing suit, and that such failure bars this suit in whole or in part.

10.    Defendant alleges that even assuming, *arguendo*, any employee of Defendant engaged in any unlawful conduct toward Plaintiff (which Defendant denies), such employee was not a managing agent of Defendant and, therefore, Defendant cannot be held responsible for that conduct.

11.    Defendant alleges that even assuming, *arguendo*, any employee of Defendant engaged in any unlawful conduct toward Plaintiff, such conduct was not authorized, ratified, condoned or consented to by Defendant.

12.    Defendant alleges that preventative and corrective opportunities were provided by Defendant Compass Group including, but not limited to, Defendant Compass Group's anti-harassment policies and procedures.

13.    Defendant alleges that Plaintiff's claims are barred, in whole or in part, by Plaintiff's unreasonable failure to take advantage of preventative and corrective opportunities provided by Defendant including, but not limited to, Defendant Compass Group's anti-harassment policy, which is to be used in reporting alleged harassment or discrimination and to avoid harm and consequences. *Burlington Indus., Inc. v. Ellereth,* 524 U.S. 742 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998); *Dep't of Health Services v. Superior Court,* 31 Cal. 4th 1026 (2003).

14.    Defendant alleges that Defendant neither intended to engage nor actually engaged in assault, battery, sexual battery or any harassing, intimidating, emotionally distressing or retaliatory conduct.

15.    Defendant alleges that any acts, conduct or alleged statements, if any, attributed to it, or any of its agents or employees, were not violent, as required by California Civil Code section 51.7.

3.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

DEF. COMPASS GROUP USA'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES    Case No. RG08382959

16.     Defendant alleges that any acts, conduct or alleged statement, if any, attributed to it or any of its agents or employees, were not based on animus towards sex, national origin, gender or membership in any other protected class.

17.     Defendant alleges that at no time did it act purposefully, knowingly, deliberately, maliciously, oppressively, intentionally, willfully, wantonly, with any bad faith or with conscious or reckless disregard of Plaintiff or the rights of Plaintiff.

18.     Defendant alleges that Plaintiff consented to, welcomed, and/or voluntarily participated in and/or approved of the alleged acts on which she now bases her causes of action for harassment, assault, battery, sexual battery, and intentional infliction of emotional distress.

19.     Defendant alleges that any acts, conduct or alleged statements, if any, attributed to it, or any of its agents or employees, were not threatening, intimidating, or coercive, or intended to be threatening, intimidating, or coercive, as defined under California law, including but not limited to California Civil Code section 51.7.

20.     Defendant alleges that they did not aid, deny or incite a denial of Plaintiff's rights under California Civil Code section 51.7 and Defendant denies liability for treble damages, or any other relief or damages as stated in California Civil Code section 52.

21.     Defendant alleges that if Plaintiff suffered any emotional distress by reason of any conduct undertaken by Defendant or anyone acting on Defendant's behalf (and Defendant denies Plaintiff suffered any such distress), it was not the intent of Defendant, or any person acting on Defendant's behalf, to inflict such emotional distress on Plaintiff.

22.     Defendant alleges that if Plaintiff suffered any emotional distress as a result of any conduct undertaken by Defendants, or anyone acting on Defendant's behalf (and Defendant denies that Plaintiff suffered any such distress), any such distress was not severe.

23.     Defendant alleges that even assuming, *arguendo*, that Plaintiff has suffered mental or emotional distress, such distress was caused, in whole or in part, by a condition unrelated to Plaintiff's employment with Defendant.

24.     Defendant alleges that if Plaintiff is suffering any emotional distress (and Defendant denies that Plaintiff is suffering from any such distress), she contributed to this emotional distress,

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

4.

DEF. COMPASS GROUP USA'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES   Case No. RG08382959

 

1    and by reason of her contribution, any remedy to which she might otherwise be entitled, if any, must

2    be denied or reduced.

3        25.    Defendant alleges that if Plaintiff suffered any emotional distress as a result of any

4    conduct undertaken by Defendant, or anyone acting on Defendant's behalf (and Defendant denies

5    that Plaintiff suffered any such distress), such conduct was beyond the course and scope of said

6    agent's employment with Defendant, and specifically contrary and in disregard of Defendant's

7    interest.

8        26.    Defendant alleges that any alleged conduct by Defendant was not the proximate cause

9    of any injury suffered by Plaintiff, if any.

10       27.    Defendant alleges that even assuming, *arguendo*, Plaintiff proves any of the causes of

11   action in her Complaint, Plaintiff was careless and negligent on her part and proximately contributed

12   to the incidents and injuries, loss and damage complained of, if any, and that Defendant is entitled to

13   have the amount of damages, if any, abated, reduced or eliminated to the extent that Plaintiff's

14   negligence caused or contributed to her injuries, if any.

15       28.    Defendant alleges that Plaintiff's maintenance of this action is frivolous, vexatious

16   and unreasonable, thereby entitling the answering Defendant to reasonable attorneys' fees.

17       29.    Defendant alleges that Plaintiff's claims are barred by the doctrine of managerial

18   privilege.

19       30.    Defendant alleges that the Complaint and each cause of action therein fails to state a

20   claim for attorneys' fees and costs.

21       31.    Defendant alleges that Plaintiff has failed to state a claim for which general, special,

22   exemplary or punitive damages may be granted.

23       32.    Defendant alleges that Plaintiff has failed to state a claim for pre-judgment interest.

24       33.    Defendant alleges that the Plaintiff failed to mitigate her alleged damages.

25       34.    Plaintiff's claim for exemplary or punitive damages against Defendant cannot be

26   sustained, because an award of exemplary or punitive damages under California law, without proof

27   of every element beyond a reasonable doubt, would violate Defendant's due process rights under the

28   Fourteenth Amendment to the United States Constitution and by analogous provisions of the

.ITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
in Francisco, CA 94108.2693
415.433 1940

 

1    California Constitution.    Alternatively, unless Defendant's liability for exemplary or punitive

2    damages and the appropriate amount of exemplary or punitive damages are required to be

3    established by clear, and convincing evidence, any award of exemplary or punitive damages would

4    violate Defendant's due process rights guaranteed by the Fourteenth Amendment of the United

5    States Constitution, and by analogous provisions of the California Constitution.

6         35.    Defendant alleges that it has not yet had an opportunity to fully investigate Plaintiff's

7    claims and reserves the right to amend its Answer to include additional, as yet undiscovered

8    affirmative defenses, which it may later determine to be applicable.

9         WHEREFORE, Defendant prays that:

10        1.    Plaintiff take nothing by this action;

11        2.    Judgment be entered in favor of Defendant and against Plaintiff;

12        3.    Defendant be awarded its reasonable attorneys' fees;

13        4.    Defendant be awarded its costs of suit herein; and

14        5.    Defendant be awarded such further relief as this Court deems just and proper.

15

16    Dated:  June 27, 2008.

17

18                                    ALAN S. LEVINS
                                      LITTLER MENDELSON
19                                    A Professional Corporation
                                      Attorneys for Defendant
20                                    COMPASS GROUP USA, INC.

21    Firmwide:85603221.1 024778.1226

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415 433 1940

6.

DEF. COMPASS GROUP USA'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES   Case No. RG08382959



## PROOF OF SERVICE BY MAIL

I am employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 650 California Street, 20th Floor, San Francisco, California 94108.2693. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On June 27, 2008, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**DEFENDANT COMPASS GROUP USA'S INC.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES**

in a sealed envelope, postage fully paid, addressed as follows:

Valerie Toohey O'Dell, Esq.
O'Dell & O'Dell, LLP
887 Island Drive, Suite 220-C
Alameda, CA 94502

Attorneys for Plaintiff
*JANET FITZSIMMONS*

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 27, 2008, at San Francisco, California.

_____
ROSIE T. YEE

Firmwide:85701013.1 024778.1226

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 84108 2693
415 433 1940

Case No. RC08382959

**PROOF OF SERVICE BY MAIL**

# EXHIBIT E

**AGREEMENT**

**By and Between**

**EUREST DINING SERVICES**

**A Division of Compass Group USA, Inc.**

**FOR THE CAFETERIA SERVICES AT**

**N.U.M.M.I. Unit #8069**

**And**

**UNITED AUTOMOBILE, AEROSPACE AND**

**AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW)**

**INTERNATIONAL UNION, LOCAL NO. 76**

**Effective:**

**December 16, 2004 through December 15, 2008**

**#8069**
**dm**

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| ARTICLE 4 | CHECK-OFF | 3 |
| ARTICLE 1 | DECLARATION OF PURPOSE | 1 |
| ARTICLE 21 | DURATION | 21 |
| ARTICLE 9 | DISCIPLINE AND DISCHARGE | 10 |
| ARTICLE 14 | GENERAL WORKING CONDITIONS | 16 |
| ARTICLE 8 | GRIEVANCE AND ARBITRATION | 8 |
| ARTICLE 11 | HOLIDAYS | 13 |
| ARTICLE 16 | HEALTH & WELFARE / INSURANCE | 19 |
| ARTICLE 15 | LEAVES | 17 |
| ARTICLE 5 | MANAGEMENT RIGHTS | 5 |
| ARTICLE 7 | NO STRIKE / NO LOCKOUT | 7 |
| ARTICLE 18 | NON-DISCRIMINATION | 20 |
| ARTICLE 20 | PAST PRACTICE | 21 |
| ARTICLE 13 | REPRESENTATION | 15 |
| ARTICLE 18 | RETIREMENT PLAN 401K | 20 |
| ARTICLE 17 | SICK LEAVE | 20 |
| ARTICLE 6 | SENIORITY | 5 |
| ARTICLE 19 | SEPARABILITY | 21 |
| ARTICLE 2 | UNION RECOGNITION / SCOPE OF AGREEMENT | 1 |
| ARTICLE 3 | UNION SECURITY | 2 |
| ARTICLE 12 | VACATIONS | 14 |
| ARTICLE 10 | WAGES AND HOURS | 11 |
|  | SCHEDULE "A" | 22 |
|  | LETTER OF UNDERSTANDING |  |
|  |    - Health and Safety Committee | 25 |
|  | LETTER OF UNDERSTANDING |  |
|  |    - Productivity Improvement | 26 |

**AGREEMENT**

THIS AGREEMENT entered into this 16th day of December 2004, between Eurest Dining Services, a division of Compass Group USA, Inc., managing the food service operations for the N.U.M.M.I. Company in Fremont, California "the Employer", and Local 76 of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) International Union "the Union".

## ARTICLE 1 – DECLARATION OF PURPOSE

The purpose of this Agreement is to insure industrial peace by setting forth herein rates of pay, hours of work and conditions of employment to be observed between the parties hereto. The parties hereto recognize that only with mutual understanding, harmony and cooperation among employees, and between employees and the Employer, and with uninterrupted operation, is it possible to conduct the Employer's business with the economy and efficiency indispensable to its existence and to the best interests of its employees, clients and customers.

The parties to this Agreement believe that in the interest of cooperation between Management and Labor, positive employee relations should be practiced at all times. All employees will be treated with respect and dignity, recognizing the full worth and dignity of all employees, union or non-union.

## ARTICLE 2 – UNION RECOGNITION / SCOPE OF AGREEMENT

Section 1.    The Employer and its successors recognize the Union as the sole and exclusive collective bargaining agent for all employees engaged in the preparation, handling and/or service of food and beverages at the N.U.M.M.I. auto production plant in Fremont, California, excluding all office and clerical employees, vending employees, guards, professional employees and supervisors as defined in the National Labor Relations Act, as amended.

1

**ARTICLE 2 – UNION RECOGNITION / SCOPE OF AGREEMENT continued**

<u>Section 2.</u>    This Agreement shall not be construed to extend to or to affect in any way any other phase of the Employer's business.  The term "employee" or "employees" used in this Agreement shall be construed to include only the classifications of employees set forth in this Article and Schedule "A" of this Agreement and shall not be construed to include any other employee(s) of the Employer in any of the Employer's other divisions, branches or units except those at the N.U.M.M.I. plant in Fremont, California.

<u>Section 3.</u>    The term "full-time employees" as used in this Labor Agreement applies to those individuals who are actively work, (e.g., not on layoff or leave of absence status), and who are regularly scheduled to work a minimum of twenty-five (25) hours every week.  The term "regular part-time employees" apples to those individuals regularly scheduled to work less than twenty-five (25) hours every week.  Regular part-time employees shall not be entitled to the fringe benefits as set forth in this Agreement (including by way of example and not by way of limitation, vacations, holidays, and health and welfare coverage).

<u>Section 4.</u>    Any reference herein to the masculine or feminine gender shall be read as to include the opposite gender as well.

**ARTICLE 3 – <u>UNION SECURITY</u>**

<u>Section 1.</u>    It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members on the effective date of this Agreement shall, on the thirty-first (31st) day following the effective date of this Agreement, become and remain members in the Union.  It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, on the thirty-first (31st) day following the bargaining of such employment become and remain members in good standing in the Union.

2

**ARTICLE 3 – UNION SECURITY continued**

<u>Section 1. (continued)</u>    The failure of any employee to become a member of the Union, and/or maintain Union membership in good standing by failure to pay the periodic dues of the Union, as herein provided, shall obligate the Company, upon written notice from the Union to such effect, and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to discharge such employee. The Union shall indemnify and hold the Company harmless against any and all claims, demands, suits or other forms of liability of any kind whatsoever which may arise out of or by reason of action taken by the Company in reliance upon such written notice from the Union.

<u>Section 2.</u>    New employees shall be on probation until completion of the first (1st) ninety (90) calendar days from the date of last hiring. During this probationary period, such employees shall be considered as being on trial subject to immediate dismissal at any time at the sole discretion of the Employer.  Discharge during the probationary period shall not be subject to Article 8 – Grievance and Arbitration.  Upon completion of the first (1st) ninety (90) calendar days, such employees shall enjoy seniority status from the date of last hiring.

<u>Section 3.</u>    There shall be no individual agreements between the Company and the employees other than as contained in this Agreement.

**<u>ARTICLE 4 – CHECK-OFF</u>**

<u>Section 1.</u>    The Employer will deduct in the first (1st) pay period of each calendar month from the pay of each employee covered by this Agreement, all Union initiation fees and dues when such employee has signed an "Authorization for Union Initiation Fee and Dues Deduction", and it has been presented to the Company.

**ARTICLE 4 – CHECK-OFF continued**

<u>Section 2.</u>    Deductions of initiation fees for the new employees, who are new members of the Union, shall be made out of the first (1st) pay period received by such employee following presentation of authorization.

<u>Section 3.</u>    Whenever possible, all deductions of initiation fees and dues shall be remitted to the Financial Secretary-Treasurer of the Local Union not later than the twenty-fifth (25th) day of the calendar month in which the deductions are made.

<u>Section 4.</u>    The Company will furnish the Financial Secretary-Treasurer of the Local Union and the Chairperson of the Committee monthly, a record of those for whom deductions have been made, together with the amount of such deductions, the names of all new hires, and the names of all employees for whom the Company has ceased, for any reason, to deduct dues.

<u>Section 5.</u>    In addition to the above, the Employer will provide the Committeeperson and Local Union Financial Secretary with the following information once a month, the names of employees newly hired, rehired, or reinstated; employees who have retired or died; employees who have transferred out of the Bargaining Unit.   This listing shall include the employee's seniority date, Social Security number, current address and telephone number.

<u>Section 6.</u>    The Union shall indemnify and hold the Employer harmless against any and all claims, demands, suits or other forms of liability of any kind whatsoever which may arise out of or by reason of action taken or omitted by the Employer in reliance upon authorization cards for the deduction of Union dues and initiation fees.

## ARTICLE 5 – MANAGEMENT RIGHTS

The management of the N.U.M.M.I. Food Service operations and the direction of the employees, including the right to hire, discipline, promote, demote, transfer, establish and enforce work rules and the right to layoff employees because of lack of work or for other legitimate reasons, subject to the provisions of this Agreement, is vested exclusively in the Employer.  The establishment or modification of workmanship, methods and schedules of operation, assignment of work, and any written description of work to be accomplished on each job is reserved for the Employer.  In the event of change of equipment or decrease in the volume of the work to be done or the subcontracting of any of the work to be done, the Employer shall have the right to reduce the working force it, in the sole judgment of the Employer, such reduction of force is required.  Nothing in this Agreement shall be construed to limit or in any way restrict the right of the Employer to adopt, install or operate any new or improved equipment or methods of operation.  Nothing contained in this Agreement shall be intended or construed as a waiver of any of the usual inherent and fundamental rights of management, whether the same has been exercised heretofore or not; and these rights are hereby expressly reserved to the Employer.

## ARTICLE 6 – SENIORITY

Section 1.    Seniority shall be defined as length of continuous service with the Employer in accordance with and subject to the following conditions as herein provided in this Article.

Section 2.    Upon completion of the probationary period, an employee will accrue seniority.  Seniority will be calculated from the date the employee was last hired by the Employer.  All new hires will be trained in their particular job classifications at the beginning of their probation period.

5

**ARTICLE 6 – SENIORITY continued**

<u>Section 3.</u>    Seniority shall be applied in the following situations only:

a)    In the computation and determination of eligibility for all employee benefits where length of continuous service is a factor pursuant to this Labor Agreement;

b)    In the case of all promotions and shift changes or assignments, provided however, that the factors of ability, skill and efficiency are relatively equal;

c)    In the case of layoff and recall in the following manner:
   (1)    In reducing the number of employees in any classification, (as set forth in Schedule "A") seniority will prevail;
   (2)    Any employee who has completed his or her probationary period and is scheduled for layoff from any classification, will be permitted to displace the employee with the least company seniority in the bargaining unit in any equality or lower rated classification; provided however, that the senior employee has the present qualifications and ability to perform the work required, without any serious interruption in production or adverse effect on the efficiency of operations.
   (3)    Recall of laid off employees shall be in reverse order of layoff by classification; however, the Employer will recall the most senior employee on layoff regardless of classification if such employee has previously worked in the classification where the recall opening exists or if such employee has the ability, skill and efficiency to perform the job available.  An employee duly notified by the Employer to return to the employee's job or to any job in the employee's classification must return to such job within five (5) days of receipt of notification of recall.  Failure to report for work within five (5) days of notification shall result in forfeiture of the employee's recall rights.
   (4)    It shall be the responsibility of employee's on layoff to keep a current address on file with the Employer for recall notification purposes.

<u>Section 4.</u>    An employee's seniority shall be broken so that no prior periods or periods of employment shall be counted and the employee's seniority shall cease upon:

a)    Justifiable discharge;
b)    Voluntary quitting;
c)    Absence without notification for three (3) consecutive working days, unless excused by the Company.  Absence without notification for any lesser period of time shall be subject to discipline or discharge in accordance with Article 9 – Discipline and Discharge;
d)    Failure to report to work within five (5) days of notification of recall from layoff;
e)    Layoff that exceeds one (1) year.
f)    See Article 15, Section 2 for medical leaves and Section 4 for return from leave requirements.

**ARTICLE 6 – SENIORITY continued**

Section 5.   The Union Committeeperson shall have "Super Seniority" which shall apply only in case of layoff and shall have no effect on promotions, shift changes, the filling of vacant jobs within a classification or any other aspect of this Agreement.

Super-Seniority shall entitle the Committeeperson to be the last removed from his or her classification in case of layoff, provided the Committeeperson has the requisite ability, skill and efficiency to perform the job(s) in which he or she is to be retained.

Section 6.   If the Employer determines there is a vacancy, then the Employer will post the initial vacancy for a period of three (3) working days.  All permanent or long-term job openings will be posted.   Production needs permitting the Employer will choose the employee it believes has the skill, ability, and efficiency to perform the available work  The foregoing factors being equal the employee with the most seniority will be awarded the position.  If in the opinion of the Employer none of the current employees are qualified to perform the available work, the Company will be free to hire an external candidate.  Subsequent vacancies, which are created by the initial job posting, will be back filled by the Employer.

The candidate selected by virtue of the bid process shall have up to twenty (20) work days to qualify.  Should the Employer determine that the bidder will not be successful or the bidder decides to give up the promotional opportunity during the trial period, the employee will be returned to former position and rate of pay.

**ARTICLE 7 – NO STRIKE / NO LOCKOUT**

Section 1.   It is agreed that during the term of this Agreement neither the Union, its officers, members, or agents shall instigate, call, sanction, condone or participate in any strike, sit-down, stay-in, walkout, slowdown, stoppage or curtailment of work, picketing or willful interference with work or receipt or shipment of materials and supplies; provided further, that such actions shall specifically include honoring the picket line and/or supporting the strike, sit-down, stay-in, etc. by the Union or another union not a party to this Agreement; and provided further, that there shall be no lockout of employees by the Employer.

**ARTICLE 7 – NO STRIKE / NO LOCKOUT continued**

Section 2.    In the event that any of the employees violates the provisions of the above paragraph, the Union, its officers, agents and the Committeeperson shall immediately and publicly disavow such action and order any of its members who participate in such action back to their jobs, forward copies of such order to the Employer, and use every means at their disposal to prevent the conduct and continuance of such action.

Section 3.    It is further agreed that during the term of this Agreement or beyond the termination hereof or beyond the termination date of any extension hereof, employees shall not be entitled to any fringe benefits or wages whatsoever while they are engaged in a strike, work stoppage or other interruption of work.

**ARTICLE 8 – GRIEVANCE AND ARBITRATION**

Section 1.    It is the purpose of this Article to provide the procedure for the prompt and equitable adjustment of grievances.

"Grievance" means a dispute or claim arising under and during the term of this Agreement, and involving the interpretation or application of or compliance with the express provisions of this Agreement.

It is the mutual desire of the parties that complaints of employees are dealt with as quickly as possible.  It is understood that the employee has no formal grievance until he/she, (and the Committeeperson, if the employee wishes), has discussed such complaint with his/her direct supervisor.  If after allowing the supervisor two (2) working days to deal with the matter the employee is not satisfied, such complaint may be submitted in writing as a grievance, provided that no more than seven (7) calendar days have elapsed from the event giving rise to the grievance.

Section 2.    The following three (3) steps shall be employed in the procedure for adjustment of grievances:

8

## ARTICLE 7 – GRIEVANCE AND ARBITRATION continued

<u>Section 2. (continued)</u>

**Step 1:**    The Union or any employee who has a grievance shall submit it in writing to the employee's immediate supervisor within seven (7) calendar days after the Union or employee affected had knowledge or should have had knowledge of the event.  The supervisor shall respond to the written grievance in writing within five (5) calendar days of receipt.

**Step 2:**    If the grievance is not settled at Step 1 and the employee or the Union desires to appeal, the grievance shall be submitted to the Manager of the N.U.M.M.I. Food Service Operations within seven (7) calendar days of the Step 1 response.  The Manager shall respond to the written grievance in writing within five (5) calendar days following the meeting.

**Step 3:**    If the grievance is not settled at Step 2 and the Union desires to appeal the decision of the Manager, the Union shall, within seven (7) calendar days of the Step 2 written response, make a written request to the Employer for a Step 3 meeting.  Upon receipt of the request, the Employer's District Manager and/or his or her designee will arrange to meet with an International Representative of the Union, the Local Union President and the Committeeperson in an attempt to resolve the grievance.  The District Manager and/or his/her designee shall respond to the written grievance in writing within five (5) calendar days following the meeting.

**Step 4:**    In the event the previous steps fail to resolve the grievance, then the Union may submit the grievance to arbitration within ten (10) calendar days of the Step 3 written response. The Union and the Employer may agree upon an arbitrator, or select an arbitrator through the American Arbitration Association or Federal Mediation and Conciliation Service.  The conduct of any arbitration shall be in accordance with the voluntary labor arbitration rules of the American Arbitration Association or Federal Mediation and Conciliation Service.  If the Grievance is not submitted to arbitration with the ten (10) calendar day period, it shall be considered resolved.

Any of the foregoing time limitations may be extended by written mutual agreement of the parties.

<u>Section 3.</u>    The expense of the arbitrator shall be shared equally by the Employer and the Union.

**ARTICLE 8 – GRIEVANCE AND ARBITRATION continued**
<u>Section 3. (continued)</u>    The decision of the arbitrator shall be submitted in writing and shall be final and binding upon the Union, the Employer and the employee(s) involved.

The jurisdiction and authority of the arbitrator of the grievance and the arbitrator's opinion and award shall be confined exclusively to the interpretation of the explicit provision or provisions of this Agreement at issue between the Union and the Employer.  The arbitrator shall have no authority to add to, detract from, alter, amend or modify any provisions of this Agreement or impose on any party hereto a limitation or obligation not explicitly provided for in this Agreement or to alter any wage rate or wage structure.

## <u>ARTICLE 9 – DISCIPLINE AND DISCHARGE</u>

<u>Section 1.</u>    It is agreed that nothing herein shall in any way prohibit the Employer from discharging or otherwise disciplining any employee, regardless of seniority, for just cause. Grounds for immediate discharge shall include, but not be limited to:  drunkenness or drinking or carrying intoxicating beverages; possession, use sale or distribution of illegal drugs or other controlled substances; dishonesty; intentional abuse of machinery or equipment; insubordination, or any deliberate action by an employee that jeopardizes the Employer's relationship with its client or constitutes repeated acts of discourtesy, or serious disregard for the Employer's customers.

<u>Section 2.</u>    Prior to termination, at the conclusion of progressive discipline <u>or</u> in the event of a serious incident or rule violation, the employee shall be placed on a short term, unpaid suspension pending case review.   During this period, (3 – 5 work days), the Union may present information pertinent to the review or they may elect to wait until the Employer completes the case review and issues final finding.  If the investigation results in a finding of "no cause" for action against the employee, they shall be reinstated with pay for the time lost. The decision of the Company remains subject to the grievance procedure in Article 8.

**ARTICLE 9 – DISCIPLINE AND DISCHARGE continued**

<u>Section 3.</u>    The Employer may establish and enforce binding rules and policies in connection with the operation of the business and the maintenance of discipline, provided that such rules are not inconsistent with the provisions of this Agreement.  Prior to implementation of any new rules or policies affecting bargaining unit employees the Employer shall confer with the Union and provide a copy of such policy or rule.

<u>Section 4.</u>    The employee being disciplined and the Committeeperson will be given a copy of any written warnings, suspension or discharge which the Company plans to make part of the employee's permanent disciplinary record.

**ARTICLE 10 – WAGES AND HOURS**

<u>Section 1.</u>    Wage rates shall be set forth in Schedule "A", which is attached hereto and by this reference made a part hereof.

<u>Section 2.</u>    A regular work week shall consist of five (5) days, Monday through Friday, eight (8) hours per day including two (2) paid ten (10) minute rest breaks and one (1) paid thirty (30) minute lunch break.

Employees may be required to work in excess of the regular work day of eight (8) hours or regular work week of forty (40) hours and in that event shall be paid overtime at the rate of one and one-half (1-1/2) times their straight-time hourly rate.  Overtime shall also be paid at one and one-half (1-1/2) times the straight-time hourly rate for hours worked on Saturday and at the rate of two (2) times the straight-time hourly rate for hours worked on Sunday.

In the event the N.U.M.M.I. plant institutes a regular work week that is inconsistent with that defined above, the Employer shall have the right to require its employees to work according to the N.U.M.M.I. schedule and overtime rates shall apply as stated above for all hours worked over eight (8) in one (1) day and over forty (40) in a week and for all time when an employee is required to work on his or her regularly scheduled days off.

## ARTICLE 10 – WAGES AND HOURS continued

Section 3.    Any full-time employee reporting at the hour designated for a scheduled day's work shall be given the opportunity to work at least four (4) hours, or in lieu thereof, shall be paid at the employee's straight-time rate of pay for four (4) hours of work, unless it is Saturday or Sunday, which will require payment of time and one half or double time, whichever is applicable, provided the employee accepts work assigned to him/her, unless notified the previous day not to report the following day, or unless the failure to provide work is caused by a condition beyond the control of the Employer.

Section 4.    Except for the report pay provision provided in Section 3, this Article shall not be construed to contain any guarantee of hours of work per day or per week or of days of work per week.  Nothing in this Agreement shall be construed to require the payment of overtime and/or premium pay more than once for the same hours worked.

Section 5.    Unanticipated daily overtime shall be performed by the employee performing the work for which the overtime is required.  The Employer will endeavor to advise employees affected by unanticipated overtime as far in advance as practicable.

Overtime scheduled in advance (24 hours), shall be assigned to the appropriate classification. Employees who are in the classification "on the shift affected" shall be offered the available overtime by seniority.  If all employees decline the scheduled overtime, it shall then be assigned to the employee(s) in the classification "on the shift affected" by using inverse seniority.

Overtime created by calling in qualified employees from second shift to first shift, shall be evenly distributed among the qualified employees willing to work.  The Site Manager and Chief Steward shall generate a listing of all employees, the positions for which they are qualified to work, including their willingness to work if called, said list shall be updated once every six (6) months.

12

## ARTICLE 11 – HOLIDAYS

<u>Section 1.</u>    Employees shall be compensated at their straight-time rate based on their normal current hours worked per day for all holidays that New United Motor Manufacturing, Inc. ceases operations and compensates its employees as paid observed holidays. The holiday schedule during the proposed agreement is as follows:

| Christmas 2005 Shutdown |
| --- |
| December 26, 2005 |
| December 27 2005 |
| December 28, 2005 |
| December 29, 2005 |
| December 30, 2005 |

| | |
| --- | --- |
| January 17, 2005 | M.L.K. Jr. Birthday |
| February 21, 2005 | Presidents Day/Cesar Chavez/Memorial Day |
| March 25, 2005 | Good Friday |
| May 30, 2005 | Memorial Day |
| July 4, 2005 | Independence Day |
| September 5, 2005 | Labor Day |
| November 24, 2005 | Thanksgiving Day |
| November 25, 2005 | Day After Thanksgiving |

Holidays for year 2006, 2007 and 2008 will be the same as the holidays described in the NUMMI-UAW Agreement with the following exceptions:

Should an increase occur in NUMMI holidays due to collective bargaining such an additional holiday will become a Eurest holiday and maybe either be a "shut-down" holiday or "employee birthday" holiday.

13

## ARTICLE 11 – HOLIDAYS continued

Section 2.    PROVIDED, that the employee shall have worked on the employee's last full scheduled work day before and the employee's first full scheduled work day after the holiday, even though in a different work week, unless the absence is previously authorized or subsequently approved in writing by the Employer, and provided further, that if an employee fails to report for work on any of the holidays here mentioned when requested to do so by the Company, then the employee shall not be paid for such holiday not worked.  Employees on Leave of Absence or layoff when the holiday occurs or when the facility starts backup after the holiday closing, shall not be paid for the holiday,

Section 3.    Should any of the above holidays fall within an employee's approved vacation period and he is absent from work because of such vacation, he/she shall be paid for such holiday or holidays and shall, if he/she desires, be allowed to schedule such holiday or holidays as part of his/her vacation period.

Section 4.    If any of the above-enumerated holidays falls on a Saturday, the previous day, and the Sunday, will be observed and paid for as the holiday.  If any of the above enumerated holiday's falls on a Sunday, the next day, and not the Sunday, will be observed and paid as the holiday.

Section 5.    When the Employer operates on any of the above named holidays, employees may be required to work unless a qualified volunteer is available.  When assigned to work on a holiday, an employee who has satisfied the work requirements, (described above), shall be paid at the rate of two (2) times the straight-time hourly rate for all hours worked in addition to the holiday pay.

## ARTICLE 12 – VACATIONS

**Section 1**   The period of service for all full time employees, for the purpose of earning a vacation with pay, shall begin with the last date of hire by the Employer.  After an employee has twelve (12) consecutive months of service with the Employer, the employee shall receive vacation with pay based on the following schedule:

Effective December 31st Annually

| | |
|---|---|
| One (1) year of service | One (1) week in the following calendar year |
| Two (2) years of service | Two (2) weeks in the following calendar year |
| Five (5) years of service | Thirteen (13) working days in the following Calendar year |
| Ten (10) years of service | Three (3) weeks in the following calendar year |
| Fifteen (15) years of service | Four (4) weeks in the following calendar year |

14

**ARTICLE 12 – VACATIONS continued**

Section 2.    Vacation pay shall be paid to the employee at the employee's straight-time hourly rate based on the number of hours in the employee's regular work week and shall be prior to departure on vacation.

Section 3.    Seniority shall be considered by the Employer in honoring employee vacation date preferences provided their choice(s) of vacation time is designated before February 1st, on a Vacation List that shall be posted on January 2nd of each year.  The Employer shall post the final vacation schedule by March 1st, and it shall remain posted for the balance of the year.  No paid vacation may be utilized without prior approval of the Employer.  For purposes of vacation scheduling, eligible employees may not take more than one hundred twenty (120) hours of vacation at one time.

The Employer will determine the number of employees allowed on vacation at any one time, consistent with the efficient operation of the business.

Section 4.    The Employer will provide a separate vacation check for all vacations of forty (40) hours or more.  Advanced vacation checks will be provided upon request.  Vacation pay for less than forty (40) hours will be part of the employee's regular check with vacation hours delineated on the employee's pay stub.

**ARTICLE 13 – REPRESENTATION**

Section 1.    The Employer recognizes the right of the Union to designate one (1) Committeeperson per shift, not to exceed two (2), from the Employer's seniority list to represent the employee's in the bargaining unit and two (2) Alternate Committeepersons who shall act only in the absence of the Committeeperson.

Section 2.    The Committeeperson shall investigate and present grievances to the designated representatives of the Employer, in accord with the Agreement.

Section 3.    Upon obtaining the approval of the Unit Manager, every reasonable effort will be made to release the Committeeperson from her or his work assignment.  Without loss of pay to investigate grievances or participate in grievance meetings with the Employer.  In no event will the Committeeperson's conduct of the activities specified herein exceed one (1) hour per work day unless such time limit is waived or extended by the Unit Manager or Assistant Manager.

## ARTICLE 13 – REPRESENTATION continued

<u>Section 4.</u>    The Employer will release no more than two (2) employees at a time from work for part of a day or a full day or more, not to exceed five (5) work days, as special leave of absence for Union business purposes provided the leave will not interfere with the Employer's ability to operate the business and the Employer is notified in writing by the Union of the need for such leave at least ten (10) working days, where practicable, before the employee is to be released.  The written notice to the Employer shall specify the employee to be released and the times and dates the leave is to begin and end.  Failure to give such timely notice and to include the information specified herein shall entitle the Employer to refuse to release the employee from work.  Leave for Union business shall not be paid by the Employer.

<u>Section 5.</u>    A representative of the Union will be granted admission to the Employer's premises for Union business at reasonable times during working hours on prior notification to the Manager or Assistant Manager.

<u>Section 6.</u>    The Employer agrees to provide a bulletin board in both facilities for the posting of official Union notices.

## ARTICLE 14 – GENERAL WORKING CONDITIONS

<u>Uniforms</u>      The Employer agrees to furnish each employee with uniforms as follows: Probationary employees, three (3) pants, three (3) shirts, three (3) aprons.  Upon passing probation, the Employer will provide a total of three (3) pants, four (4) shirts and four (4) aprons.  Uniforms worn out through normal usage shall be replaced by the Employer at no cost to the employee.  Cleaning cooks' hats and repair of uniforms will be the obligation of the Employer.  The Employer will pay fifty cents (50¢) per day for laundry of uniforms if the uniform at issuance and return of uniforms upon termination of employment.

<u>Meals</u>      The Employer will furnish each employee with one (1) meal per day and management reserves the right to control what is consumed if necessary.

<u>Work Performance</u>      Supervisory employees may perform work normally recognized as work of employees in the bargaining unit provided such work is not done on a regular basis and that the performance of such work by supervisory employees does not deprive bargaining unit employees of their regular number of working hours.  The Employer recognizes the work performed by the Bargaining Unit and reaffirms its pledge not to perform bargaining unit work unless the manager is training, the Client requests service or an emergency situation exists.

16

## ARTICLE 14 – GENERAL WORKING CONDITIONS cont.

The Employer will introduce and encourage promotional opportunities in the work place and its other regional facilities through regular chat meetings and postings.

The Employer will arrange with N.U.M.M.I. security for a safety training class for interested employees and will refer issues of first aid kit inventory to safety committee members Sydney Barnes and Diana Camacho or their replacements.

The Employer will endeavor to find convenient ESL (English as a second language) classes and promote attendance by the employees through communication and any Compass Group tuition reimbursement program within six months of the date of ratification.

Search of an employee's locker must be done in the presence of the employee.    The Employer will ask the employee if the employee would like a steward present or in the stewards absence another bargaining unit employee present.

## ARTICLE 15 – LEAVES

<u>Section 1. – General</u>    The Employer may grant an unpaid personal leave of absence without loss of seniority to full-time employees upon completion of their probationary period, providing:  (1) the absence of the employee will not interfere with the operational needs of the business; and (2) the Employer considers the reasons for the leave justifiable.  A leave will not be granted for the purpose of taking other employment.  Personal leave may be granted for a period not to exceed sixty (60) calendar days.

<u>Section 2.</u>    The Employer shall grant an unpaid medical leave of absence without loss of seniority to full-time employees upon completion of the probationary period.  Medical leave may extend for the period that the employee is medically disabled from working, up <u>to a limit of nine (9) months</u> (see Article 6, Section 4).  The Employer may require proof of the medical disability and/or examination by the Employer's physician, (at the Employer's expense).  Any employee's failure or refusal to provide proof of disability and/or submit to examination shall entitle the Employer to deny an employee's request for a leave of absence.  Any disputes over the existence of a valid medical disability shall be resolved by an objective third (3rd) party medical opinion.

**ARTICLE 15 – LEAVES continued**

Section 3. – Requesting Leave    Any request for a leave must be in writing starting the reasons for and duration of the leave.  If an extension is required, it must be requested and approved prior to the expiration of the initial leave.

Section 4. – Returning from Leave    The employee must notify the Employer at least seven (7) calendar days in advance of the date to return from a leave of absence.  Failure to return to work following expiration of the leave shall result in automatic termination of employment (see Article 6, Section 4).  Upon return from leave an employee will be reinstated to the job held when the leave commenced, or to a similar job if one is available, providing the employee is able to perform the work immediately.

Section 5.    For the first thirty (30) days of leave, the Employer will allow vacation accrual and will maintain health and welfare coverage.  After such time, employees must pay their own premiums to maintain health and welfare coverage.  Employees on leave shall not be entitled to any other benefits under the Agreement.

Section 6. – F.M.L.A.    Employees eligible for leave under the Family and Medical Leave Act of 1993 shall be extended such rights and privileges granted under the Act.

Section 7. – Bereavement Leave    When death occurs in an employee's immediate family, i.e., spouse, parent, grandparent, parent or grandparent of current spouse, grandchild, child, brother, sister, half-brother, half-sister, step-parent, step-child, son-in-law, daughter-in-law, sister-in-law, brother-in-law; the employee on request and upon notifying the Company by telephone or telegram whenever possible, will be excused for up to three (3) normally scheduled working days, (excluding Saturdays and Sundays), up to and including the funeral, provided he/she attends the funeral.  (Funeral shall include any bona fide memorial service.)

An employee excused from work under this paragraph shall, after making written application and upon providing satisfactory proof of such death, receive the amount of wages he/she would have earned by working during straight-time hours on such scheduled days of work for which he/she is excused.

**ARTICLE 15 – LEAVES continued**

<u>Section 8. – Jury Duty</u>    Employees who are subpoenaed for jury duty service shall be paid for time lost as a result of such jury duty at the regular rate of pay and employee shall remit to the Company any pay received from any other source for such jury duty.  Employees called for jury service shall notify the Company immediately upon receipt of subpoena.    The employees agree to cooperate with the Company in making requests for postponement of jury duty when business conditions require it.

**ARTICLE 16 – HEALTH AND WELFARE / RETIREMENT / INSURANCE**

<u>Section 1.</u>    The Employer will provide medical and dental coverage as follows:
For new hires on or after December 16, 2001, eligibility for benefits will occur the first (1st) of the month after ninety (90) days of service provided the employee is on a regular schedule of twenty-five (25) hours per week or more.

There are two (2) HMO healthcare options, (Kaiser and Cigna), and a dental HMO through Cigna (Cigna Standard - $10.00 co-pay). The Employer agrees to pay for single coverage for the duration of this Agreement.  If the employee desires 2 Person or Family coverage, the Company will pay fifty percent (50%) of the additional premium above single provided the employee pays the remainder of the 2 Person or Family premium through payroll deduction.

Vision coverage is provided through the Kaiser Plan **(medically related only)** or VSP (exams, glasses**)**.  Employee health co-payments will be capped at five ($5.00) dollars.

The Employer agrees to reimburse employees for medical and prescription (generic and formulary) co-pays above five dollars ($5.00), and has provided a form for verification and rebate that protects employee's privacy rights**.**

<u>Section 2.</u>    Effective 12/16/04, Eurest will continue the insurance (Medical – Dental**)** opt out program.  Employees who have alternate Healthcare coverage, (includes all Health, Dental Plans, etc.) who are currently receiving Employer Health and Welfare coverage can opt out of the Employer Plan if they provide proof of alternative coverage, and they will be entitled to receive one hundred dollars ($100.00) per month.  The "opt out" will be done in writing on a form provided by the Employer.  Once a year in December for January 1st, (open enrollment), or in the event of a life change event, an employee will be allowed to re-enroll if their alternate coverage lapses or changes.  The one hundred dollar ($100.00) payment would then cease.

<u>Section 3.</u>    Effective the first (1st) of the month following ninety (90) days of service, the Employer will provide each eligible employee with $8,000 of Life Insurance and $8,000 of Accidental Death and Dismemberment insurance. This benefit will be provided to all eligible employees, (see Section 1 for definition), if they take coverage or opt not to take coverage as described in Section 2 above.

## ARTICLE 17 – SICK

Section 1.    Five (5) days paid sick leave will be provided every January 1st.  Unused sick days each calendar year shall be paid off at full value in December prior to Christmas.        .  Sick days may not be carried over.

Section 2.     External new hires shall first be eligible for sick days after completion of one (1) year of service pro-rated from the first anniversary date to the end of the current calendar year.  Five (5) days shall be provided on the following January 1st and on each subsequent January 1st.  Unused days during the "pro-ration" period shall be paid off in December prior to Christmas.

Section 3.     Sick Leave payments shall be made in eight (8) hour increments only.  Absences for more than two (2) consecutive days may require the employee to submit a statement by a physician.

## ARTICLE 18- RETIREMENT PLAN 401K

Section 1.     Eligible employees are encouraged to sign up for the Compass Group 401-K Retirement Plan in accordance with the terms and conditions of the plan.  To be eligible to participate, employees must be on a regular schedule and have completed six (6) months of service with the Employer.

## ARTICLE 19 – NON-DISCRIMINATION

The Employer and the Union agree that they will not discriminate in the hiring of employees, or in their discipline, discharge or other transactions because of race, sex, color, religion, national origin, handicap (as defined in the Americans with Disabilities Act), status as a veteran or Vietnam-era veteran, or age in regard to any position for which the employee is qualified.

## ARTICLE 20 – SEPARABILITY

It is the intent of the parties hereto to abide by all applicable Federal and State statutes covering the subject matter of this Agreement.   Should any provision of provisions of this Agreement be determined to be contrary to any such State or Federal statute, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in full force and effect.

## ARTICLE 21 – PAST PRACTICE

This Agreement represents the sole and complete Agreement between the parties and supersedes all agreements, understandings, and practices in effect prior to the date of this Agreement, whether the same were based on implication, written or oral agreements or other factors.

## ARTICLE 22 – DURATION

This Agreement shall become effective as of December 16, 2004 and shall continue in effect up to and including December 15, 2008, and from year to year thereafter, unless and until either of the parties hereto shall give to the other written notice at least sixty (60) days prior to the expiration date of December 15, 2008 or the expiration date in any year thereafter, of its intention to change or terminate this Agreement.


**EUREST DINING SERVICES**
**A division of Compass Group USA**

**UAW INTERNATIONAL UNION**
**LOCAL NO. 76**


_____
Regional Director                    Date

_____
                                                          Date


_____
Manager, Labor Relations        Date

_____
                                                          Date


_____
                                                          Date


_____
                                                          Date


_____
                                                          Date


21

### SCHEDULE "A"

**Section 1.**    The following schedule sets forth the effective dates and the minimum hourly rates of pay agreed upon for each classification of work:

Effective December 16, 2004:

| Position | Start | 6 months | 12 months |
|---|---|---|---|
| Cook | 12.88 | 13.46 | 14.67 |
| Assistant Cook | 10.81 | 11.30 | 13.18 |
| Grill / Baker | 10.81 | 11.30 | 13.18 |
| Catering | 9.65 | 10.21 | 11.73 |
| Food Service Worker | 9.36 | 9.94 | 11.40 |
| Cashier | 9.61 | 10.19 | 11.65 |
| Utility | 8.77 | 9.36 | 10.35 |

Effective December 16, 2005:

| Position | Start | 6 months | 12 months |
|---|---|---|---|
| Cook | 13.40 | 14.00 | 15.26 |
| Assistant Cook | 11.24 | 11.75 | 13.71 |
| Grill / Baker | 11.24 | 11.75 | 13.71 |
| Catering | 10.04 | 10.62 | 12.20 |
| Food Service Worker | 9.73 | 10.34 | 11.86 |
| Cashier | 9.98 | 10.59 | 12.11 |
| Utility | 9.12 | 9.73 | 10.76 |

Effective December 16, 2006

| Position | Start | 6 months | 12 months |
|---|---|---|---|
| Cook | 13.94 | 14.56 | 15.87 |
| Assistant Cook | 11.69 | 12.22 | 14.26 |
| Grill / Baker | 11.69 | 12.22 | 14.26 |
| Catering | 10.44 | 11.04 | 12.69 |
| Food Service Worker | 10.12 | 10.75 | 12.33 |
| Cashier | 10.37 | 11.00 | 12.58 |
| Utility | 9.48 | 10.12 | 11.19 |

**SCHEDULE "A" (continued)**

Effective December 16, 2007

| Position | Start | 6 months | 12 months |
|---|---|---|---|
| Cook | 14.50 | 15.14 | 16.50 |
| Assistant Cook | 12.16 | 12.71 | 14.83 |
| Grill / Baker | 12.16 | 12.71 | 14.83 |
| Catering | 10.86 | 11.48 | 13.20 |
| Food Service Worker / | 10.52 | 11.18 | 12.82 |
| Cashier | 10.77 | 11.43 | 13.07 |
| Utility | 9.86 | 10.52 | 11.64 |

Employees working in a higher paid classification will be paid the higher rate for actual hours worked.

Designated employees will be re-classified into the classification "Cashier" at the above scheduled rates.

Section 2.    A four percent (4%) increase will be effective December 16, 2004 upon ratification and will be entitled to the same increase on the effective dates indicated below:

| | |
|---|---|
| December 16, 2004 | four percent (4%) |
| December 16, 2005 | four percent (4%) |
| December 16, 2006 | four percent (4%) |
| December 16, 2007 | four percent (4%) |

Section 3.    Any employee who works a special function involving setting up of tables (i.e., place settings), waiting/food service tables (i.e., a sit down meal which is served to guests as part of a special function) and cleaning up after a special function will receive $1.00/hour for time working the special function in addition to their regular hourly rate.  The waiting/food serving tables is the key element, which must be performed to qualify the employee for the $1.00/hour for time spent working the special function.

1)    If a temporary or emergency condition arises requiring the temporary transfer assignment of an employee to a higher rated classification, then such employee shall receive upon completion of a minimum of two (2) hours of work, the straight-time hourly rate of pay as established for the classification to which he has been transferred for all hours worked in the higher classification.

If the temporary transfer or assignment is to a lower rated classification, then the employee affected shall continue to receive his/her current straight-time hourly rate of pay as established for his/her permanent classification.  Such temporary transfers shall be offered first to the most senior available employee on the same shift with the ability, skill and efficiency to perform the work of the higher classification.

## SCHEDULE "A" (continued)

2)      If a permanent or indefinite condition arises requiring the permanent or indefinite transfer or assignment of an employee to another classification, or in the event of a promotion, demotion, or any displacement of an employee as a result of layoff, then such employee shall receive the straight-time hourly rate of pay as established for the classification to which he/she has been transferred.

3)      Within each classification there are likely to be a number of separate primary job functions (cashier, food preparation, etc.).   Whenever a vacancy occurs within a classification, other than a temporary or emergency condition, the Employer will allow the senior interested employee with the appropriate ability, skill and efficiency, to assume the primary job function of the vacant position.

Section 4. Bonuses:

Effective with the implementation of this agreement, each employee actively on the payroll of the Employer will be entitled to a one time net signing bonus of two hundred fifty ($250) dollars.  Employees currently on probation will not be entitled to a signing bonus unless and until they have successfully passed probation.

A bonus of one hundred ($100.00) "net" dollars will be paid to each employee in December of years 2,3, and 4 of the agreement provided the catering trucks service the facility at the time the bonus is due.

4)      <u>Shift Premium</u> – The Company will continue its current practice of paying twenty-five cents (25¢) per hour to employees working on shifts that start after 2:30 p.m.

5)      The Union agrees that the Employer can hire new employees at any step of the wage grid based on their prior work experience provided that it does not create disparate pay situations within the classification.

**LETTER OF UNDERSTANDING**

**BETWEEN**

**EUREST DINING SERVICES,**
**A Division of Compass Group USA, Inc.**

**NEW UNITED MOTORS MANUFACTURING INCORPORATED**

**AND**
**U.A.W. INTERNATIONAL UNION LOCAL 76**

**RE:  HEALTH AND SAFETY COMMITTEE**

This will confirm that for the duration of this Collective Agreement, which expires December 15, 2004, the following understanding was reached by the parties.

The parties to this Agreement recognize their obligation to cooperate in maintaining and improving a safe and healthful working environment, and to use all their best efforts jointly to achieve these objectives.

In keeping with the foregoing, the parties agreed that a Joint Safety Committee be established consisting of one (1) Bargaining Unit employee, and the Food Service Director or higher designee.  These two (2) individuals will meet as required to monitor the heath and safety of the Food Service operation at New United Motors in keeping with the objectives noted above.

EUREST DINING SERVICES, INC.                    UAW INTERNATIONAL UNION
A Division of Compass Group USA, Inc.            LOCAL NO. 76

_____                 _____
Regional Director              (Date)                                        (Date)


_____                 _____
Labor Relations Manager        (Date)                                        (Date)


                                                 _____
                                                                             (Date)

25

**LETTER OF UNDERSTANDING**

**BETWEEN**

**EUREST DINING SERVICES,**
**A Division of Compass Group USA, Inc.**

**NEW UNITED MOTORS MANUFACTURING INCORPORATED**

**AND**
**U.A.W. INTERNATIONAL UNION LOCAL 76**

**RE: <u>PRODUCTIVITY IMPROVEMENT</u>**

This will confirm that for the duration of this collective Agreement, which expires December 15, 2004, the following understanding was reached by the parties.

The parties to this Agreement agree that productivity enhancement is the goal of all employees and management for a more efficient Food Service operation. Therefore, the Union and the Employer agrees to introduce productivity enhancement techniques and procedure as to determine whether current manpower is being utilized as effectively and efficiently as possible.

The parties to this Agreement will cooperate completely with each other in the implementing of processes and procedures necessary to achieve their mutual goal of improved productivity and efficiency.

EUREST DINING SERVICES, INC.                    UAW INTERNATIONAL UNION
A Division of Compass Group USA, Inc.            LOCAL NO. 76


_____            _____
Regional Director            (Date)                                          (Date)


_____            _____
Labor Relations Manager      (Date)                                          (Date)


                                                              _____
                                                                                           (Date)


26

# EXHIBIT F

1    ALAN S. LEVINS, Bar No. 57612
     LITTLER MENDELSON
2    A Professional Corporation
     650 California Street
3    20th Floor
     San Francisco, CA  94108.2693
4    Telephone:    415.433.1940
     Fax No.:        415.399.8490

5

6    Attorneys for Defendant
     COMPASS GROUP USA, INC.

7

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF ALAMEDA

10    JANET FITZSIMMONS,           Case No. RG08382959

11           Plaintiff,            ASSIGNED FOR ALL PURPOSES TO
                               JUDGE Steven A. Brick
12        v.                           DEPARTMENT 17

13    COMPASS GROUP USA, INC. dba       **NOTICE TO STATE COURT, PLAINTIFF**
     COMPASS GROUP FOODSERVICE      **AND COUNSEL OF REMOVAL OF CIVIL**
14    and as EUREST DINING SERVICES;     **ACTION TO FEDERAL COURT UNDER**
     EDITH SALAS, HUMBERTO SALAS,     **28 U.S.C. §§ 1331, 1441, AND 1446**
15    and DOES 1 through 10, inclusive,      **(FEDERAL QUESTION)**

16          Defendants.          Complaint filed:  April 21, 2008

17

18    TO JUDGE STEVEN A. BRICK OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF
     ALAMEDA AND TO THE PLAINTIFF AND HER ATTORNEY OF RECORD:
19

20             PLEASE TAKE NOTICE that Defendant COMPASS GROUP USA, INC. has, on

21    June 30, 2008, filed a Notice of Removal in the office of the Clerk of the United States District

22    Court in and for the Northern District of California.  A true and correct copy of said Notice of

23    Removal and accompanying exhibits are attached hereto and incorporated herein by reference as

24    Exhibit 1.

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108 2693
415 433.1940

Firmwide:85695079.1 024778.1226              1

DEF. COMPASS GROUP USA'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES    Case No.

1        PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446, the

2   filing of said Notice of Removal of Civil Action with the United States District Court, together with

3   the filing of said Notice of Removal of Civil Action with this Court, effects the removal of this

4   action and this Court may proceed no further unless and until the case is remanded.

5

6   Dated:  June 30, 2008.

7

8                                                         ALAN S. LEVINS
                                                         LITTLER MENDELSON
9                                                         A Professional Corporation
                                                         Attorneys for Defendant
10                                                        COMPASS GROUP USA, INC.

11   Firmwide:85603221.1 024778.1226

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA  94108-2693
415.433.1940

Firmwide:85695079.1 024778.1226                                   2.

DEF. COMPASS GROUP USA'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES          Case No.